Good morning and may it please the court. My name is Sylvia Wu. I'm here on behalf of Appellant Organic Family Farmers and other organic stakeholders. I'd like to reserve three minutes of my time for rebuttal. Very well. With me in the courtroom today, I have my co-counsel, Ms. Meredith Stevenson, as well as Mr. Paul Moeller, co-owner of Appellant Full Belly Farm. This appeal is about whether soil building is an essential component for organic crop production in this country. The answer is yes. The word organic and organic farming refers to soil organic matter. So soil building is the foundation of the environmental benefits that consumers associate with the organic label. Counsel, what role do you think Section 6512 of the statute plays in our analysis? Yes, Judge Graber, Section 6512, it defines the scope of when undefined production practices are mentioned in the statute. Right. If a production or handling practice is not prohibited or otherwise restricted, and I'll skip some words, it's permitted unless it's inconsistent with the organic certification program. So there is kind of a catch-all that if it's not prohibited, it's okay. So where is production in water or other media other than soil prohibited? Production in other media, not in soil, is prohibited for organic crop production under 65112 because it's three parts. It's not just if it's expressly prohibited. It must also not be otherwise restricted in the statute. To be allowed, it must also be... Where is there a restriction? Where has Congress said you can't do this or you can do it only if you do something special with the water or something like that? Sure, Judge Graber, we can look at the... If we look at the 76513, that's where Congress set out the production practices for different production types. And there, for crops, there's crop production farm and then there's also wild crop. For wild crop production management, it doesn't mention soil at all. It doesn't have the soil building requirement. Farming without soil building practices is restricted to wild crop harvesting only under the Organic Act. If it has to do with soil, but where does it say everything has to be grown in soil, wild or farmed? Where does it say that? Well, it says it for the Organic Crop Production Plan because it mandates that they must build soil fertility. And as we know from Burns v. United States, the fact that it doesn't expressly say, if you grow in soil, you must foster soil fertility. It doesn't have that conditional clause. Alone, it doesn't mean that Congress didn't envision prohibition of other rights. So, Crystal, let me ask you about this. Your whole argument rests, I understand, essentially rests on 6513B1. And it's designed to foster soil fertility primarily, so that means not exclusively, but primarily through the management of the organic content of the soil through tillage, crop rotation, and manuring. So, let's talk about rotation. Isn't there a practice in agriculture about letting land go fallow, right? So, you don't, as I understand it, and I'm with my rudimentary knowledge, that's land you grow in a season and then we don't grow in the next season because that restores fertility. So, isn't it true that simply by not using soil, the type of hydroponic farming actually fosters fertility because it's not depleting the soil? Well, Judge Baker, it's possible that one can construe it that way, but that's not the question before the court. That's not what USDA did here. USDA just waived the requirement. It says it doesn't matter whether or not hydroponic production fosters soil fertility. They don't need to show that. They don't need to build in any practices or prove that as part of their farming, whereas my client does as part of his organic farm. Well, but your client doesn't have to give a livestock plan because they don't have livestock. I mean, it looks to me like they're just setting out alternatives. If you use soil, you have to do this. If you have livestock, you have to do something else. And if you harvest wild crops, there's a third set of requirements. It doesn't seem to say that these are the only options. It's the only things they thought of at the time, I guess, in, what, 1990 when they put together this statute. Judge Graber, I think the livestock example is a good one, right? If you raise livestock, then you have to comply with the livestock plan. And if you farm in soil, you have to care about the soil. But that's not what the statute says. The statute says for all organic crop production farms, it has to foster soil fertility. It didn't call it the soil-based farming. It didn't need to say so because soil building was understood to be synonymous with organic farming. So why doesn't, going back to my question, why doesn't hydroponic farming foster soil fertility? Why doesn't it? Because it's not depleting the soil. So it seems to me, by definition, this is like the very best fostering of soil fertility you can get because you're not depleting farmland. You're allowing farmland to be used for other crops. Well, Your Honor, one, I think there's a difference between fostering soil fertility and not depleting. Fostering is actually building additions, and that's what farmers like my client does with all his practices, and they're measuring soil carbon content in the soil. I'm also a beginner at this. But more importantly, that's not what USDA decided here. USDA didn't say if you, as a hydroponic grower, show that you're not disturbing the soil, we consider that you're fostering soil fertility. USDA says the requirement to address soil health in any way simply doesn't apply to hydroponic production. And this is contrary to USDA's own interpretation prior to the petition denial. Right, but I'm understanding your argument, and your argument is, it seems to me, contrary. I mean, you're relying upon this provision to make this rule, and I just don't agree with your reading of B-1 here. And that's a central part of your case is B-1. That's really all you have. B-1 says that for an organic crop production farm, their farm plan must contain provisions to foster soil fertility. Is hydroponic production a farm? Yes, they are. The word farm isn't defined in the statute. But what if a reasonable interpretation of a farm is a soil-based production with acreage, and hydroponics is not even a farm, in which case this B doesn't apply anyway? Well, Judge Graber, that wouldn't be a reasonable interpretation of the statute because to determine the meaning of the word farm, since it's undefined under the canyons, we will look at its ordinary meaning as well as how it's used in the statute. I'll jump straight to it. I'll start with how it's used in the statute. The word farms, throughout the statute, Congress used it expansively to cover all production facilities. In talking about what's the universe of entities that are eligible for organic certification, Congress said it repeatedly uses the phrase each farm and handling operation. No one here is saying... Well, counsel, you know, when you look at the... I'm looking through 6513. B talks about farms, crop production farms, C talks about livestock, and it doesn't use the word farm because it talks about livestock production. And F, which talks about crops, wild crops, talks about harvesting wild crops from an area. So farm seems to be used in the sense of things grown in the soil so that B just is irrelevant, it seems to me, to this whole thing. It's not a prohibition. It says if you grow it in soil, do these things, but it doesn't say you can't grow it in some other medium. Judge Graber, under the canons, the word farm, as used in the statute, should be given a consistent meaning. So if farm is narrowly used, if you construe farm to mean just growing soil because the other sections do not use the word farm, then the phrase each farm and handling operation, farm there would eliminate ranches and so forth as well. No, because of the handling operations. I mean, it's a different kind of production, I guess. I meant in the sense of the livestock example. So to be eligible for organic certification under the statute, they have to fit into either a farm or handling operation because that's the phrase that Congress used.  and harvesting wild mushrooms is a farm? Yes, because under the statute, you have to designate the area in which you would conduct this activity. And the word farm can broadly mean a place where certain things are raised or harvested. And because you have to designate that area, you are farming because you are producing agricultural products within a defined site. And that's how the word is used throughout the statute. Farm was used to capture all farming entities. The statute doesn't use the word ranch, for example, which is what we traditionally think of for livestock. And so here, organic crop production farm under USC 6513B just talks about organic crop production. And we all agree that we're talking about crops here. We're talking about herbs and tomatoes and so forth. So USDA's reliance on exempting hydroponic production based on its view that it's not a farm, it's contrary to how the word farm is used in the statute. Its interpretation is therefore unreasonable and also unpersuasive since its petition denial was issued without any notice in comment and contrary to how USDA itself interpreted the word farm. So as I understand it, this is a situation in which there was a refusal to make a rule, not a rule. So does there have to be notice and comment for a refusal when there's no proposed rule to comment on? There isn't a, well, so two parts to this answer. There isn't a requirement, although agency customarily for something that's controversial and highly studied, which is what we're dealing with here, would usually afford notice and comment. And especially here, USDA itself actually repeatedly said that it would do so. I point the court to FER6, and there's other examples here where USDA repeatedly told stakeholders that there would be notice and comment to engage in rulemaking. And whether or not there's a proposed rule, there was a 2010 recommendation from the experts advising USDA. I thought they had changed their viewpoint since then. Am I wrong about that? No, the 2010 recommendation is the only recommendation that was put forth. Later on, there was another proposal in 2017 that dealt with hydroponics. And the NOSB no longer opposes the labeling of hydroponics as organic. Am I right about that? No, that's not the case. I think, Your Honor, you're thinking about the failed motion in 2017. That motion didn't straightforwardly prohibit hydroponic production from organic certification. It defined... It talked about, basically, a percentage of ratios in liquid nitrogen feeding. It was a confusingly worded proposal. The National Organic Standards Board's 2010 recommendation, which did pass, straightforwardly said you should prohibit hydroponic production. And it's advisory only, though. And it's a form of notice and comment, I suppose. But it is not binding on the agency, correct? It's true that it's not binding, but the interactions between the USDA and the Board is telling here. After that recommendation, USDA went ahead and formed a task force to study whether or not hydroponics can fit. And it repeatedly looked at the issue of soil production and the soil fertility requirements. So USDA thought it applied, and then it changed its mind in the petition denial. I see that I'm eating into my rebuttal time. Yes, thank you very much. And we'll give her three minutes. Good morning, Your Honor, and may it please the court. Daniel Winnick for the government. Plaintiff's challenge to the denial of this rulemaking petition presents the basic question whether the statute compels the conclusion that hydroponically grown crops can't be certified as organic. Because the statute doesn't compel that conclusion, there's no basis for the court to set aside the denial of the rulemaking petition or require the revocation of all existing organic certification for hydroponically grown crops, as plaintiffs suggest. Excuse me. Could you move your mask just to make it a little bit... make it more understandable, please? Thank you. Sorry. So let me just zoom out for a moment to sort of the way this statute works. The statute at issue here requires essentially three things for an agricultural operation to be certified as organic. It has to meet the requirements in Section 6504, none of which is a requirement to use soil. It has to not engage in any of the practices prohibited by Section 6508, none of which is the use of soil. And it has to have an organic plan. So plaintiff's argument is essentially that Congress precluded the organic certification of all hydroponically grown crops, the whole type of crop production, by requiring organic plans to contain a type of provision that wouldn't logically apply in that type of production. But that would have been a surpassingly strange way for Congress to create a soil requirement if soil were as central to organic production as plaintiffs suggest. And when we turn to the details of the statutory text and context, there's no reason to overcome that skepticism. So the soil fertility requirement applies to crop production farm plans. As my friend noted, the statute doesn't define such plans. We know that they apply only to the production of crops on farms. And the statute also doesn't define farm, but it does provide a very good indication of what is meant by the word farm standing alone, which is that when it defines a certified organic farm as a term of art, it defines it to mean, quote, a farm or portion of a farm or site where agricultural products or livestock are produced. And so if you were thinking about in which of those buckets a hydroponic operation fits, it's obviously far more natural to consider it a site where agricultural products are produced than to consider it a farm. That's very good reason to think that the organic plan requirements for crop production farm plans don't apply to hydroponic operations. And again, the question before this court isn't even sort of what's the best reading of the statute standing alone. Under the highly deferential standard of review that applies to the denial of a rulemaking petition, the question is does the statute answer this question so clearly that the denial of the petition should be set aside under the APA? Both the legislative history and the regulatory history, just on top of the text, indicate that from the start, Congress and the Department of Agriculture expected soilless production practices to be certified as organic. So the Senate committee, for example, recommended that the department develop standards for aquaculture products, and when the department proposed regulations implementing the act for the first time, it changed references to organic farming to refer instead to organic production, recognizing that it was doing so to provide an encompassing term that could come to include hydroponics. And, you know, the question whether hydroponics should be certified as organic as a matter of policy has divided the National Organic Standards Board over time.  And the relevance of that, I think, is not that, you know, one side or another ends the sort of statutory debate over the meaning of that, over the permissibility of that form of production. This is a policy question. The statute doesn't clearly speak to this. You know, you would think from reading Plano's brief that it is just sort of so obvious that soil has to be used that this is not a proper subject of debate, and, in fact, it's been hotly contested for a long time. I'm happy to take further questions the Court has, unless the Court has questions for me. I do not. We'd ask that the district court's judgment be affirmed. Very well. Thank you. Thank you, Your Honor. I'd like to start just by addressing the deference point. There isn't an extreme deference that's applicable here because all parties agree that we're dealing with the question of statutory interpretation. And as the Supreme Court instructed in Kaiser and other cases in dealing with a case of statutory interpretation, there's no deference to USDA's interpretation here if the statute is unambiguous. And since USDA issued its petition denial without notice in common, even if this Court were to find the statute ambiguous, the relevant deference standard would be Skidmore, under which USDA's interpretation is still unpersuasive. USDA talks about the definition of certified organic farm as used in the statute. As USDA noted, that's a separate term of art. So, and even there, that definition actually supports that Congress intended the word farm to be used expansively. It includes site where agricultural products are raised. And under the canons of statutory interpretation, words in the list should be interpreted to have similar meanings. So the list farm, portion or farm, or site where agricultural products are produced have similar meanings. And so farm is used expansively throughout the statute to cover all production facilities. And we cite numerous examples of that, and we've been discussing that this morning. I'd like to quickly point out other reasons why USDA's petition denial violates the organic standard. It resulted in two sets of production standards that are inconsistent production standards contrary to the very purpose of the act of creating consistent standards for organically produced foods. As a result of the petition denial, now when you go to the store and buy a pint of cherry tomatoes, on the one hand, my client, Mr. Momoa, has to engage in a bunch of practices that Judge Baker, you mentioned, in order to grow those tomatoes. And on the other hand, hydroponic growers, it's unclear what production standards would apply to them because USDA says that the rules for organic crop production does not apply because they're not farms. But the prohibitions apply. There's a list of statutory prohibitions. Those apply, don't they? Actually, not according to USDA's definition of the farm because 7 U.S.C. 6508 applies only to farms. That statute starts with, you know, in order for a farm to be certified organic, a producer of a farm must, and then it goes on to list the prohibitions. So if hydroponic facilities are not farms, those prohibitions would not apply. And USDA previously, and even with the petition denial, held that hydroponic facilities are farms. I point the court to 7 CFR 205.202, which discusses land requirements for farm production. And there, that provision applies to field and farm parcel, and USDA, with the petition denial, explained that that provision applies to hydroponic facilities. I see that I'm out of time, so in closing, I'd just like to point out, really quickly, back to the cherry tomato example. As a result, today, with the petition denial, we have two sets of identical tomatoes, except only some of them live up to the true meaning of organic. As a result, this court should vacate USDA's petition denial, reverse the lower court's ruling, and remand to the agencies with further instruction consistent with this court's ruling. Thank you. Thank you very much, counsel. Thank you both for your, I think, very strong briefing and argument in this case. This matter is submitted, and we are adjourned for the day. I did want to say, for those folks in the Public Defender's Office, we're going to go conference now. When we're done conferencing, we'll come out and speak with you. A couple of my law clerks are happy to talk to you guys, not about the cases today. No inside scoop, and if there are any other lawyers here. My law clerk will also be here to chat with you. Feel free to answer questions. All right, thank you very much, everybody.
judges: GRABER, OWENS, Baker